Ophelia COLE, Plaintiff-Appellant,

v.

Arthur LITZ, Fred A. Eppenberger and Eleanor Waltuch, as Members of the Civil Service Commission of St. Louis County, Missouri, Defendants-Respondents.

No. 38592.

Missouri Court of Appeals,
St. Louis District, Division Two.

Feb. 21, 1978.

Steven K. Brown, St. Louis, for plaintiff-appellant.

Andrew J. Minardi, Associate County Counselor, St. Louis, for defendants-respondents.

STEPHAN, Judge.

Appellant, Mrs. Ophelia Cole, was a merit system employee of the St. Louis County Department of Community Health and Medical Care assigned to the billing office of the county hospital. Her employment commenced on August 29, 1971, and was terminated as of November 15, 1974. She was notified of the termination by letter dated November 21, 1974, from Gerald Pendleton, Assistant Director of the department's personnel branch. Mrs. Cole made timely demand for a hearing before the Civil Service Commission. A full hearing resulted in a decision, in effect, that there was cause for her dismissal (inefficiency) but that she should be placed on the "reemployment eligible list". The decision also encouraged the department to consider Mrs. Cole for appointment in the same grade in any unit of the department other than the billing office. The decision of the commission was affirmed by the Circuit Court, and Mrs. Cole appeals. We review with the guidance of Article 5, § 22, Constitution of Missouri, Rule 100.07(b) and § 536.140–2, RSMo 1969.

Appellant asserts that the trial court erred in affirming the Commission's decision because there was not substantial and competent evidence on the whole record to support it. In the body of her argument, appellant urges this conclusion for two basic reasons: that certain matters received in evidence did not rise to the necessary quantum, and that the commission and the trial court erroneously assumed that the burden of proof was on her at the commission hearing. For reasons herein stated, we hold that there was substantial and competent evidence from which the commission could have found that she was inefficient in the performance of her duties. However, it being clear that the commission misconceived its adjudicative functions in this case, we remand to the circuit court with directions to reverse the order of the commission and remand the cause to the commission for reconsideration.

From the evidence adduced at the hearing, the commission reasonably could have found the following: Robert Stewart became general supervisor of the hospital billing office in April, 1974. He reviewed the incoming mail on a daily basis and noticed that many claims directed by the hospital to Blue Cross, Medicaid, Medicare, and insurance carriers were being returned because of various errors. He began keeping a log to assist him in fixing responsibility. From this and other sources he learned that Mrs. Cole was making many of the errors. Those attributed to Mrs. Cole included errors in billing proper amounts, failure to supply necessary supporting data with claims, improper computer coding, mathematical errors, and incorrect alphabetical filing of patients' accounts. In Stewart's opinion, Mrs. Cole was guilty of twice as many errors as any other employee in the office. Because of the time it took to correct the errors and because of the substantial number of days of sick leave and vacation taken by Mrs. Cole,[1] it became necessary to assign two summer employees to assist Mrs. Cole in attempting to bring her work to a more current status.

The commission could have further found: Mrs. Cole took a scheduled vacation from August 26 through 30, 1974. On the morning she was to return, she called Stewart and advised him that she would have to take another week of vacation because she did not have a babysitter for her children. The second week had been earned but not scheduled, and Stewart objected because of the large volume of business in the office and the fact that she was needed. Upon her return the following week, Stewart met with her and told her that her work was below acceptable standards. Stewart presented her with a summary sheet of the matters discussed, which Mrs. Cole refused to sign. On the next day, a meeting of the hospital's comptroller, Mr. Stewart, and Mrs. Cole took place. The comptroller, a Mr. Trent, placed Mrs. Cole on thirty days' probation under the terms of which she would turn her work into Mr. Stewart for examination. According to Mr. Stewart, her work did not improve during this period. She apparently was not advised of her status at the end of the thirty days. On October 21, 1974, Mrs. Cole consulted a physician who recommended major surgery. After a second consultation, she entered a hospital on October 27, underwent the surgery, and was released six days later. While she was in the hospital, she received two telephone calls from Stewart inquiring when she could return to work. Stewart placed a similar call to Mrs. Cole while she was convalescing at home. When Mrs. Cole could not give him a date as to when she could return to work, he told her that her sick leave time had been exhausted[2] and that he could not keep her job open for her indefinitely. The termination letter followed.

In support of the contention that certain evidence did not meet the "competent and substantial" test, appellant urges that the department's evidence "consisted of": (a) a summary list of errors committed by several billing clerks (including herself) which revealed neither the ratio of errors to total transactions performed by each employee nor the economic impact of any of the errors; (b) four improperly processed billing

---

1. In the letter to Mrs. Cole from the appointing authority setting forth the reasons for her dismissal, "excessive absenteeism" is cited as one of the grounds. However, the commission found "that the bulk of the evidence concerning absenteeism is only relevant insofar as it affects the issue of efficiency . . . " Thus, Mrs. Cole appears to have been exonerated by the commission on the charge of excessive absenteeism, though not wholly from the effect of the evidence introduced to support it. In view of the disposition of this case, we invite the commission's attention to the discussion of such a charge in *Stewart v. Board of Education of Ritenour Consolidated School District*, 538 S.W.2d 765 (Mo.App.1976).

2. This statement by Stewart was apparently erroneous. Prior to her employment at the hospital, appellant had been employed by the county in the office of the prosecuting attorney. At the time her employment in the prosecutor's office terminated, she had accrued 43.5 hours of sick leave. When she returned to work for the county, she was not given credit for these hours.

forms; and (c) appellant's legitimate sick leave and vacation usage record without a showing of the impact on appellant's quality of work or a showing that her usage was excessive when compared to usage of other employees.

Having examined the transcript of the hearing before the commission, all of the exhibits introduced at the hearing, and the briefs of the parties, we disagree with the appellant's contention that the department's evidence "consisted" of the foregoing matters. In making such argument, appellant ignores the evidence presented by the department from which the commission could and did find that she was inefficient in the performance of her duties. The documentary evidence referred to in (a) and (b) of appellant's point was merely illustrative of testimony presented on behalf of the department; the evidence concerning appellant's use of sick leave and vacation time was, in fact, accompanied by a showing of deleterious impact on the quality of appellant's work and a showing that her usage exceeded that of other employees.

We determine that there is substantial and competent evidence on the whole record to support the decision and that the decision was not clearly contrary to the overwhelming weight of the evidence. *Hanebrink v. Parker*, 506 S.W.2d 455 (Mo.App. 1974). However, we cannot affirm.

The evidence tending to support the charge of inefficiency was not uncontroverted. There was evidence which, if believed, tended to show the absences were justified and that the errors were not the result of inefficiency or incompetency, but rather the product of unfair work distribution among the employees resulting in an inordinate amount of workload being assigned to appellant.[3] Appellant was entitled to have this evidence weighed fairly and impartially by the commission. Rule 100.07(b); § 536.140–2, RSMo 1969.

Under the heading "Conclusions of Law and Decision", the commission noted that,

according to its own rule, its policy is to support appointing authorities in requiring efficient service from merit system employees. The commission then stated:

"It is tempting for the Commission in a case of this character to substitute our judgment for that of the responsible party.

"Although we are sympathetic with Appellant we are compelled to conclude that the judgment of the Department must be upheld. To hold otherwise would be to substitute the judgment of the Commission for that of the appointing authority and we do not feel that we should do that in the absence of some compelling evidence that the judgment of the appointing authority was unsound or improperly motivated. There is no such evidence here."

Thus, by the terms of the commission's decision, Mrs. Cole could not have prevailed unless there appeared "compelling evidence that the judgment of the appointing authority was unsound or improperly motivated . . . " even though the commission found the independent exercise of judgment "tempting". The appointing authority was entitled to no such position of evidentiary advantage; evidence presented by the department did not, simply by virtue of its source, deserve more credit than that presented by the appellant.

A similar situation appeared in *Heidebur v. Parker*, 505 S.W.2d 440 (Mo.App.1974) in which a police officer demanded a hearing before the board of police commissioners after the superintendent of police ordered his dismissal. Under a board rule, a dismissed officer was required to open and close the hearing. The officer argued that the rule unfairly shifted the burden of proof; and this court, speaking through Judge McMillian, agreed. The following appears at page 444:

"In the instant case the evidence is undisputed that plaintiff was discharged by the Superintendent based not upon a

---

**3.** The evidence tending to support a result favorable to appellant could not reasonably be characterized as "overwhelming". It is, however, substantial and competent. Cf. *Hanebrink v. Parker*, 506 S.W.2d 455, 458 (Mo.App. 1974).

hearing, but only upon the Inspector's Report. His first evidentiary hearing, although styled an appeal, was before the Board. It was at this hearing that pursuant to the Board's procedure that defendant was required to put on his proof that he had not violated any of the department regulations contained in the Code of Discipline and Ethics. In other words, defendant had the burden of proving that his discharge was improper. . . . Here what is styled by the Board as an appeal, is, in fact, even from a cursory reading of the transcript a de novo hearing of the entire controversy. Thus, since the Board hearing was the first evidentiary hearing of an adversary nature, we hold that the Superintendent has the burden of proof and should have been required to put on his case first; . . . It is only fair since the Superintendent filed the charges that he be required to prove them before ordering plaintiff's discharge."

The court then concluded that the procedure dictated by the rule "failed to afford plaintiff due process".

In the instant case, it is clear that the department undertook the burden of proof by going forward with the evidence. The problem arises here in the commission's own concept of its function and its refusal to "substitute" its "judgment" for that of the appointing authority.[4] The commission was the finder of fact and the arbiter of disciplinary measures to be imposed, if any. It could not abdicate that responsibility. By requiring appellant to come forward with compelling evidence of her innocence of the charges, it unfairly shifted the burden of proof, thus failing to afford appellant due process. *Heidebur*, supra.

We may not substitute our judgment on the facts of this case for that of the commission. *Lafayette Park Baptist Church v. Scott*, 553 S.W.2d 856, 863 [19, 20] (Mo.App. 1977). Accordingly, the cause is reversed

and remanded to the circuit court with instructions to remand the same to the commission for reconsideration in light of this opinion. Rule 100.07(e); § 536.140–5, RSMo 1969.

STEWART, P. J., and REINHARD, J., concur.

---

4. Compare *Mark Twain Bancshares, Inc. v. Kostman*, 541 S.W.2d 1, 3, footnote 2 (Mo.App. 1975) wherein this court held that the circuit court misstated the law when it said that a decision of the State Banking Board was arbitrary and capricious because the board had substituted its discretion and judgment for that previously exercised by the Commissioner of Finance. There, as here, the hearing was de novo.