Ronald W. GAMBLE,
Plaintiff-Appellant,

v.

Colonel Howard HOFFMAN and the
Missouri State Highway Patrol,
Defendants-Respondents.

No. WD 35638.

Missouri Court of Appeals,
Western District.

Aug. 6, 1985.

Richard C. Thomas, Ron Stafford (argued), Columbia, for plaintiff-appellant.

John Ashcroft, Atty. Gen., Theodore A. Bruce (argued), Jefferson City, for defendants-respondents.

Before LOWENSTEIN, P.J., and SOMERVILLE and NUGENT, JJ.

NUGENT, Judge.

Ronald W. Gamble appeals from the circuit court's affirmance of his dismissal from the Missouri State Highway Patrol. The Highway Patrol cross-appeals from the circuit court's interlocutory order finding the patrol's first dismissal of Trooper Gamble not in accordance with §§ 536.080 and 536.090.[1] We affirm in part, reverse in part, and remand to the circuit court with directions.

Trooper Gamble was a member of the Missouri State Highway Patrol when this case arose. On November 19, 1982, the Patrol filed charges accusing him of violating four general orders involving inattention and lack of devotion to duty, conduct unbecoming a member of the patrol, untruthfulness in reporting his actions to his supervisors, and immoral conduct.

The charges all stemmed from an incident which occurred on November 8, 1982, when Gamble visited the home of Rose Ann Sears to pay for some firewood he had agreed to purchase. Gamble and Ms. Sears were social acquaintances, and he was a friend of the Sears family. At the time she was unwed whereas he was married. Ms. Sears complained that Trooper Gamble made unwelcome sexual advances to her involving kissing her and rubbing her breasts. She also complained that the trooper tried to get her to go into her bedroom with him. He denied those complaints, saying that he only rubbed her shoulders because she told him that she was tense and nervous.

After the Trooper left her house, Ms. Sears reported to her father and to her friend, Jetta West, her version of what had occurred. They advised her to complain to the Highway Patrol, which she did. Gamble's commanding officer questioned him about the event, and he denied the sexual advances. The Patrol filed formal charges, and at Gamble's request a disciplinary hearing board was convened pursuant to § 43.150.

At the hearing, Gamble's attorney attempted to impeach Ms. Sears' credibility by showing that she had pled guilty to a charge of stealing over $500 from an employer and that she had made inconsistent statements to her father and friend about the incident. The evidence mainly consist-

---

1. All sectional references are to Revised Statutes of Missouri, 1978.

ed of the testimony of Trooper Gamble and Ms. Sears. They were the only persons present at the critical time.

The board found that the charges were true and sufficiently serious to warrant Gamble's dismissal. It made no detailed written findings of fact and conclusions of law, but stated in its written findings only that it found that the charges were true. The board recommended to the commanding officer that Trooper Gamble be dismissed. The Superintendent, Colonel H.J. Hoffman, without reading a transcript of the hearing or reviewing the record, ordered Gamble dismissed.

The trooper appealed his termination to the circuit court of Randolph County. After a hearing, the court issued an interlocutory order remanding the case to the disciplinary board, ordering it to make findings of fact and draw conclusions of law in accordance with § 536.090. The court further held that Colonel Hoffman was the official charged with making the final decision in the case. Accordingly, the court ordered that before he rendered a decision the superintendent read the full record or personally consider those portions of the record referred to in written arguments or briefs.

In accordance with the circuit court's interlocutory order, the disciplinary board reconvened and held a second hearing. Ms. Sears' credibility was further impeached when Trooper Gamble's attorney showed and counsel for the Patrol agreed that at the first board hearing she had lied in testifying that she was single, that her name was Sears and that she had been married only twice. In fact, as Trooper Gamble's counsel showed the board at the second hearing, Ms. Sears had been married for a *third* time on November 30, 1982, only nine days before she testified at the first hearing. Her new husband's name was Sumpter, not Sears.

In addition, at the second hearing, Trooper Gamble called as a character witness a deputy sheriff who knew Ms. Sears. He specifically testified that her reputation for honesty and truthfulness in the community in which she resided was "bad."

At the end of the second hearing, the board once again found the charges to be true and sufficiently serious to warrant dismissal. Its decision included detailed written findings of fact and conclusions of law. At the request of Trooper Gamble's attorney, the board made a finding on the credibility of Ms. Sears, stating that:

30. To substantiate the charge of 'conduct unbecoming,' the Board had only to listen to testimony given by both Sears and Gamble. Each testified as to what transpired on the couch at the residence on November 8, 1982. Both testified there was physical contact to some degree. The degree of physical contact as testified to by Sears was carried further than that admitted to by Gamble. It again becomes the duty of the Board to consider truthfulness. The majority of the Board assessed more credence to the testimony given by Sears, corroborated by the testimony of Jetta West and Keith Sears because of the following reasons: a. There simply was no evidence presented to substantiate that Rose Ann Sears has anything to gain from concocting such a complaint. Certainly she has far less reason to prove the issue than Trooper Gamble does to disprove it. Substantial testimony has not been presented to indicate she has a reason to lie, especially against a person who has been characterized as her friend. Trooper Gamble could give no reason for her to lie. The thought that she 'wanted her moment on the stage' or 'wanted to be the center of attention' has no merit.

The board once again recommended to Colonel Hoffman that the trooper be fired.

After reading the transcript from the December 8 hearing and listening to a tape of the board's second hearing, Colonel Hoffman ordered that Trooper Gamble be dismissed. Once again the trooper appealed to the circuit court, which held two hearings. At the second hearing, Trooper Gamble presented the testimony of Ms. Sears' previous husband and a former boy-

friend. Both testified that she had a very bad reputation for truth and veracity. Ultimately, the court affirmed Gamble's dismissal.

In its findings, the court concluded that the board's decision was supported by substantial and competent evidence. It also found that judging the credibility of witnesses was not within its scope of review and, therefore, that the issue of Ms. Sears' credibility was not before it. The court also awarded Gamble back pay for the time he was improperly dismissed according to the circuit court's earlier interlocutory order.

Gamble's only point on appeal is that he was denied due process because the disciplinary board impermissibly shifted to him the burden of proof and risk of non-persuasion as shown by its finding No. 30. In its cross-appeal the Highway Patrol raises three points. First, that the court erred in ruling that the superintendent of the Patrol and not the board makes the final decision on dismissal of a trooper and, therefore, that Colonel Hoffman was not required to read the record before ordering the dismissal. The Patrol further complains that the disciplinary board was not required by § 536.090 to make detailed written findings, and that it made the findings required by § 43.150. Its final point is that the award of back pay should be reduced by the amount of unemployment compensation Gamble received during the period of his first dismissal and that it be further reduced because of his failure to make a reasonable attempt to mitigate his damage.

## I.

■ Trooper Gamble's appeal calls into question the actions of the disciplinary board. Our review of an agency decision in a contested case is limited to considering whether the decision is supported by substantial competent evidence, and whether the decision was arbitrary, capricious, unreasonable, or an abuse of discretion. *Citizens for Rural Preservation, Inc. v. Robinett,* 648 S.W.2d 117, 124 (Mo.App.1982).

The Highway Patrol's points concern alleged errors by the circuit court.

Trooper Gamble's sole point is that he was denied due process of law because the disciplinary board impermissibly shifted to him the burden of proof and risk of non-persuasion as evidenced by its finding No. 30. That finding concerned the issue of the credibility of the complainant, Ms. Sears. As the board stated in its finding, the issue of Ms. Sears' credibility was crucial to its decision that the charges against Mr. Gamble were true. Essentially, the case amounted to the board's decision to believe Ms. Sears and to disbelieve the trooper.

■ In seeking to dismiss Trooper Gamble, the Highway Patrol is the proponent of an order in a contested case and has the burden of proof in sustaining the reasons for his dismissal. *Tonkin v. Jackson County Merit System Commission,* 599 S.W.2d 25, 31–32 (Mo.App.1980); *Phelps v. Metropolitan St. Louis Sewer District,* 598 S.W.2d 163, 165 (Mo.App. 1980). Gamble contends that the board shifted the burden of proof to him when it required him to present substantial evidence explaining why Ms. Sears would lie. He is correct. The disciplinary board placed more credence in the testimony of Ms. Sears because no proof was presented to show that she had anything to gain from contriving the complaint, because she had far less reason to prove the issue than he to disprove it and because Gamble could give no reason for her to lie. Of course, the accused trooper had no duty or burden to show either that Ms. Sears lied or why she lied. The Patrol as the accuser had the burden to prove the affirmative of the proposition that Gamble had violated the Patrol's rules and regulations as charged. To do so, the Patrol had to rely upon Ms. Sears' testimony and to vouch for her credibility. *State v. Kinne,* 372 S.W.2d 62, 67 (Mo.1963).

■ In analyzing the Trooper's complaint, we first note that the board neither affirmatively and explicitly found Ms. Sears to be a credible witness who furnished substantial evidence of Gamble's of-

fenses nor that Gamble himself was not a credible witness in his own behalf. Ms. Sears' credibility was for the board to determine, *Barnes Hospital v. Missouri Commission on Human Rights*, 661 S.W.2d 534 (Mo.1983) (en banc), but the board, rather than unequivocally finding her to be credible, found instead that Trooper Gamble had not proved her to be incredible. In doing so, it impermissibly shifted the burden of proof from the Patrol to the trooper. *Cole v. Litz*, 562 S.W.2d 795 (Mo.App.1978).

In *Cole*, the St. Louis County Department of Community Health and Medical Care discharged Mrs. Cole for inefficiency, and she appealed to the Civil Service Commission. After an evidentiary hearing, the commission found that the dismissal was supported by sufficient although controverted evidence of inefficiency. The appellate court held that Mrs. Cole was entitled to have the contrary evidence fairly and impartially weighed by the commission. The court found, however, that the commission, pursuant to its own policy of supporting appointing authorities in requiring efficient service from merit system employees, had stated in Mrs. Cole's case that it was compelled to uphold the department "in the absence of some compelling evidence" that its action in firing Mrs. Cole was unsound or improperly motivated. Thus, the employee could not have prevailed before the commission unless she proved the department's action unsound or improperly motivated. The court of appeals held that "[b]y requiring appellant [Cole] to come forward with compelling evidence of her innocence of the charges, it unfairly shifted the burden of proof, thus failing to afford appellant due process," citing *Heidebur v. Parker*, 505 S.W.2d 440, 444 (Mo.App.1974).

The measure of Ms. Sears' credibility was not what the accused trooper proved or failed to prove about her motives. Her credibility and, therefore, the substantiality of the Patrol's charges against Gamble were for the Patrol to establish in putting on its evidence. To say that the accused did not later show his accuser to have lied or why she lied begs the question whether her testimony furnished the substantial evidence necessary to the Patrol's case against the trooper. The board's finding on the issue of Sears' credibility, explicitly based as it was on the trooper's inability to prove that she lied and why she lied, falls short of a finding based upon substantial evidence.

■ An administrative agency or board may weigh testimony and choose to believe or disbelieve all or part of it, but it may not set up a test or standard for credibility which requires the party not having the burden of proof to establish the incredibility of the witness for the party having the burden of proof.

## II.

In its cross-appeal the Patrol has raised several points concerning the circuit court's initial ruling on the dismissal of Trooper Gamble. First, it argues that the trial court erred in holding that the superintendent of the Patrol rather than the disciplinary board had the responsibility to make the final decision on the dismissal. It further argues that, since the superintendent was not the arbiter, he did not have to read the record before ordering the trooper's dismissal.

■ Section 43.150, provides that the following procedure be employed in disciplining or dismissing a Patrol member:

After a probation period of one year the members of the patrol shall be subject to removal only for cause after a formal charge has been filed in writing before or by the superintendent and upon a finding by a majority of a board of five members appointed by the superintendent.... Within thirty days after the petition is filed, the board shall conduct a hearing and report to the superintendent the finding by the majority of the board, whether the charges are true and if sufficiently serious to warrant removal. All lawful rules, regulations, and orders of the superintendent shall be obeyed by the members of the patrol who shall be

subject to dismissal as provided or to such lighter punishment as suspension not to exceed thirty days, fine, reduction in rank, forfeiture of pay or otherwise as the superintendent may adjudge.

The statute requires that, after conducting a hearing, the disciplinary board report to the superintendent on the truth of the charges and whether they warrant dismissal. The scheme of § 43.150 contemplates that then the superintendent must act upon the board's report, adopting its findings and recommendations in whole or in part or making new findings. The section also provides that members of the patrol shall obey the Patrol's rules and regulations and the orders of the superintendent. Finally, the statute clearly provides that the superintendent shall "adjudge" the dismissal or other punishment to be imposed on members of the Patrol. It does not provide that the board may adjudge or decide what is the appropriate discipline or impose such discipline. The board itself recognized this construction when in its findings after the first hearing it only *recommended* to the superintendent that Trooper Gamble be fired. The circuit court correctly concluded that § 43.150 charges the Patrol superintendent with making the final decision.

■ Since the superintendent must make the final decision, § 536.080(2) requires him to read the entire record of the disciplinary hearing or personally consider the portion cited in briefs or arguments. That section provides as follows:

2. In contested cases, each official of an agency who renders or joins in rendering a final decision shall, prior to such final decision, either hear all the evidence, read the full record including all the evidence, or personally consider the portions of the record cited or referred to in the arguments or briefs. The parties to a contested case may by written stipulation or by oral stipulation in the record at a hearing waive compliance with the provisions of this section.

The Supreme Court has held that, in deciding a contested case, the members of an administrative tribunal must observe the requirements of the Administrative Procedure and Review Act, including § 536.080. *T.J. Moss Tie Co. v. State Tax Commission,* 345 S.W.2d 191, 193 (Mo.1961). This is a contested case as defined by § 536.-010(2). The Patrol raises the possibility that our decision on this point will allow the superintendent to disregard the finding of a disciplinary board. No doubt that is possible, but the superintendent must follow the dictates of the Act in making his final decision. *Id.*

Next, the Patrol contends that the trial court erred in requiring the disciplinary board to make detailed findings of fact and conclusions of law in accordance with § 536.090. It argues that § 43.150 specifically applies to the Highway Patrol and that statutes specifically applicable to an agency control over general administrative provisions. *State* ex rel. *Zimmerman v. Moran,* 439 S.W.2d 503, 504 (Mo.1969); *Tuffli v. Board of Education of the Wentzville R–4 School District,* 603 S.W.2d 77 (Mo.App.1980).

In those cases, however, the respective statutes applied to a specified agency which covered an area of administrative agency function also covered by a general administrative statutory provision. In our case, § 43.150 and § 536.090 cover different areas of agency function. Section 43.-150 simply provides that a disciplinary board report its finding on the truth of charges to the patrol superintendent; it does not cover what written findings or conclusions a board is required to make. Section 536.090 deals with that function of the board and requires that written specific findings accompany every decision in a contested case.

■ Where two statutes relate to the same subject matter they are in pari materia and are to be construed together as if they constitute one act, even if they are passed on different dates. *State* ex rel. *Cairo Bridge Commission v. Mitchell,* 352 Mo. 1136, 181 S.W.2d 496, 497 (1944) (en banc); *Curators of Central College v. Rose,* 182 S.W.2d 145, 150 (Mo.1944). In construing § 43.150 and § 536.090, we hold

that § 43.150 requires that the disciplinary board report its finding to the superintendent and that § 536.090 requires that its decision be accompanied by written findings of fact and conclusions of law.

Finally, the Patrol asserts that the trial court erred in not reducing its award of back pay by the amount of unemployment compensation received by Trooper Gamble and by not further reducing the award because of his failure to make a reasonable attempt to find other employment to mitigate his damages.

 An improperly dismissed public employee is entitled upon reinstatement to recover his lost back pay from the date of termination to the date of his reinstatement. That back pay must, however, be reduced by such sums as he may have or could have earned from other employment or which he has received as unemployment benefits during the time he was deprived of his regular employment. *Edmonds v. McNeal*, 596 S.W.2d 403, 408 (Mo.1980) (en banc); *Wolf v. Missouri State Training School for Boys*, 517 S.W.2d 138, 147–48 (Mo.1974) (en banc); *Moreland v. Paule*, 659 S.W.2d 609, 614–15 (Mo.App.1983). In computing the amount to be deducted in mitigation of the back pay award, the employee is entitled to credit for reasonable attorneys' fees and reasonable necessary expenses incurred in vindicating his right to reinstatement. Those offsets are to be determined by an administrative evidentiary hearing for that purpose in the event the employee is reinstated. *Edmonds v. McNeal, supra,* 596 S.W.2d at 408.

Accordingly, we affirm the rulings of the circuit court that the superintendent of the patrol is the final decision maker in a disciplinary decision, that he must review the record before making his decision, and that the disciplinary board must make written findings pursuant to § 536.090.

We remand the case to the circuit court, however, with directions to set aside its judgment affirming the decision of the superintendent and to remand the cause to the superintendent for any further proceedings he chooses to pursue consistent with this decision. In the event the superintendent orders a new hearing on the charges against Trooper Gamble, considerations of fairness dictate that a new board be convened in view of the fact that the original board has twice heard all or part of the evidence and has made recommendations which upon receipt of new evidence it might decide not to make.

LOWENSTEIN, J., concurs.

SOMERVILLE, J., dissents by way of separate opinion.

SOMERVILLE, Judge, dissenting.

I respectfully dissent in part and concur in part.

My dissent lies with the strained logic of the majority opinion that Finding No. 30 of the Board erroneously shifted to Gamble the burden of impeaching Ms. Sears' credibility as a witness.

Put in proper perspective, under Finding No. 30 the Board found Ms. Sears' testimony to be more credible than that of Gamble and observed that Gamble had not offered any evidence attacking Ms. Sears' credibility as a witness. To hold, as does the majority opinion, that such erroneously shifted the burden of proof to Gamble is tantamount to saying that the offering party carries the burden of attacking the credibility of his or her own witnesses. It is axiomatic that it is incumbent upon an opposing party to attack the credibility of an opposing witness, not upon the offering party to attack the credibility of his or her own witnesses as the flawed logic of the majority opinion would have us believe. Addressing the issue in terms of erroneously shifting the burden of proof, as does the majority opinion, distorts the entire matter and injects a totally false issue which has neither logic, fact nor case authority for its support. In pure, simple terms, the Board found Ms. Sears' testimony credible and observed, albeit somewhat ineptly from a standpoint of pure legalese, that Gamble had not attempted to attack her credibility

on what appeared to the Board to be potentially salient grounds.

I would affirm the judgment of the Circuit Court affirming Gamble's dismissal.